# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2266
_____

Wagstaff & Cartmell, LLP

*Plaintiff - Appellee*

v.

Neal R. Lewis

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: February 15, 2022
Filed: July 15, 2022
_____

Before SMITH, Chief Judge, BENTON and KELLY, Circuit Judges.
_____

SMITH, Chief Judge.

Wagstaff & Cartmell, LLP (Wagstaff) filed a declaratory-judgment action against attorney Neal R. Lewis, seeking a declaration that Wagstaff owed nothing to Lewis for any work on a wrongful death lawsuit or, in the alternative, a determination of the amount it owed to Lewis. Lewis filed counterclaims against Wagstaff, including a counterclaim under the theory of quantum meruit. After adjudicating

several procedural motions, the district court[1] entered judgment in Wagstaff's favor. On appeal, Lewis argues that the district court erred in (1) denying his motion to dismiss for lack of subject-matter jurisdiction (R. Doc. 42); (2) denying his motion for leave to dismiss counterclaims without prejudice and motions for leave to file his second amended answer (R. Doc. 57 and 97); (3) denying his motion to dismiss the declaratory-judgment action without prejudice under the abstention doctrine (R. Doc. 97) and motion to reconsider the denial of that dismissal motion (R. Doc. 153); and (4) denying, in part, his motion to alter or amend the judgment or, in the alternative, relief from judgment (R. Doc. 166). We affirm.

## I. *Background*
### A. *Wrongful Death Lawsuit*

In 2010, Dr. Charlisa Allen filed a wrongful death lawsuit in federal district court in Arizona following the death of her husband. *See Allen v. Am. Cap. Ltd.*, No. 2:16-cv-02876-JAT (D. Ariz.). Allen retained Lewis as counsel in the lawsuit.

Four years later, Allen contracted with Wagstaff to actually litigate the wrongful death lawsuit. The contract limited the scope of Wagstaff's representation to pursuing a "claim against the manufacturers of Heparin only for injuries and damages arising from the wrongful death of [Allen's] husband." R. Doc. 74-1, at 1. The contract did not mention Lewis; instead, it referred only to Wagstaff's potential employment of other counsel. Wagstaff served as lead plaintiff's counsel in the wrongful death lawsuit.

In 2014, Lewis twice e-mailed Jonathan P. Kieffer of Wagstaff, proposing that he and Wagstaff enter some sort of co-counsel arrangement in which they share

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

-2-

representational responsibilities and fees. Wagstaff, however, never responded to these requests.

During the litigation, Wagstaff never employed Lewis or retained him for any legal services in relation to the wrongful death lawsuit. Wagstaff and Lewis never entered into a written agreement for division of fees in the wrongful death lawsuit, nor did Lewis ever enter into a written agreement providing that he and Wagstaff would assume joint responsibility for the wrongful death lawsuit. At no time did Allen and Lewis enter into a written agreement providing for the division of fees and responsibilities between Lewis and Wagstaff. Furthermore, Lewis and Wagstaff never entered into an oral fee-splitting agreement. In fact, "there was never any meeting of the minds regarding fee-sharing between [Lewis] and Wagstaff." R. Doc. 71-5, at 8. Lewis, however, maintains that he did consult on some discovery issues and review filings made in the wrongful death lawsuit. But he admitted that Wagstaff had done the "bulk of the heavy lifting" in the wrongful death lawsuit. *Id.* at 4.

On January 22, 2018, Allen terminated her attorney-client relationship with Lewis. The federal district court in Arizona granted Lewis's application to withdraw as counsel for Allen.

On March 18, 2018, the parties in the wrongful death lawsuit reached a confidential settlement, and the case was dismissed with prejudice. Upon learning of the dismissal, Lewis began demanding payment of his purported attorney's fee from Wagstaff.

B. *Procedural History*

On November 1, 2018, Wagstaff filed this declaratory-judgment action against Lewis, seeking a declaration that Wagstaff owed nothing to Lewis for any work on the wrongful death lawsuit or, in the alternative, a determination of the amount it

owed to Lewis. After the filing, "[t]he proceedings in th[e] action . . . be[came] quite active," with "[t]he parties . . . fil[ing] numerous motions." R. Doc. 124, at 1.

Lewis filed a pro se answer and counterclaim. In response, Wagstaff moved to dismiss Lewis's counterclaim and moved for summary judgment. Lewis did not respond to either motion; instead, he filed a pro se amended answer with counterclaims and moved for an order to dismiss as moot Wagstaff's motion to dismiss and summary-judgment motion. Relative to this appeal, Lewis asserted a quantum meruit counterclaim in his amended answer. Wagstaff countered with a motion to dismiss Lewis's amended counterclaims. The district court denied as moot Wagstaff's initial motion to dismiss Lewis's counterclaim. But the court noted that Lewis's amended answer and counterclaims did not impact "the arguments and statement of facts" in Wagstaff's summary-judgment motion. R. Doc. 20, at 1. It ordered Lewis to show cause why it should not grant Wagstaff's summary-judgment motion.

Lewis then retained counsel and moved to dismiss the instant declaratory-judgment action for lack of subject-matter jurisdiction. He contended that he was a Missouri resident at the time that Wagstaff, a Missouri resident, filed the lawsuit. Lewis argued that diversity jurisdiction could not exist because both parties were Missouri residents. He moved to stay the case pending resolution of the jurisdictional issue. The district court stayed the case to determine if jurisdiction existed. Based on the record developed at an evidentiary hearing before a magistrate judge, the district court held that "the objective factors demonstrate that Lewis was domiciled in Indiana at the time this suit was filed on November 1, 2018." R. Doc. 42, at 15. As a result, the court determined that it had subject-matter jurisdiction and denied Lewis's motion. It ordered Lewis to respond to Wagstaff's summary-judgment motion and motion to dismiss Lewis's amended counterclaims. The court lifted the stay.

-4-

Instead of answering Wagstaff's motions, Lewis filed a notice of voluntary dismissal of his amended counterclaims without prejudice; alternatively, he moved for leave to dismiss his amended counterclaims without prejudice. In a separate filing, Lewis moved for leave to file a second amended answer to "clari[f]y the issues . . . after [his] dismissal of the counterclaims contained in [his] First Amended Answer." R. Doc. 45, at 1.

Thereafter, the district court ruled on the several pending motions. Relevant to the present appeal, it determined that Lewis could not voluntarily dismiss his counterclaims without leave of court because the request came after an evidentiary hearing. The court denied Lewis's alternative motion for leave to dismiss the amended counterclaims without prejudice after analyzing the relevant discretionary factors. The court concluded that Lewis's "legal maneuvering thus far in the litigation support[ed] an inference that he is trying to evade the jurisdiction of this [c]ourt." R. Doc. 57, at 6. The court cited Lewis's failure to "seek dismissal based on a lack of subject-matter jurisdiction until months after the litigation was pending and after filing his answer and then his amended answer." *Id.* at 5–6. Nor had Lewis "given [any] reason for seeking leave to dismiss his counterclaims." *Id.* at 6.

The court also denied Lewis's motion for leave to file a second amended answer, concluding that Lewis was "acting in bad faith in attempting to amend his answer." *Id.* In support, the court noted that Lewis had changed several prior admissions to denials in his proposed answer. And, while Lewis "purport[ed] to not state any counterclaims in his proposed second amended answer," the court determined that "the substance of the pleading clearly states at least one counterclaim" of quantum meruit. *Id.* at 7. Although Lewis "claime[d] quantum meruit as an affirmative defense," the court concluded that it "is a cause of action" for which Lewis sought "declaratory judgment." *Id.*

The district court denied Lewis all requested relief, while it granted Wagstaff's motion to dismiss Lewis's amended counterclaims. The court concluded that Lewis's contingent fee agreement with Allen was "void as against public policy." *Id.* at 13. Based on this conclusion, the court determined that Lewis was not entitled to a quantum meruit recovery.

In a separate order, the court denied as premature Wagstaff's summary-judgment motion. The court noted that the case was "in its relatively early stages" and that "[d]iscovery ha[d] not yet commenced." R. Doc. 58, at 2. The court reasoned that discovery might show that Lewis is entitled to attorney's fees under another contract.

After discovery commenced, Wagstaff filed its second summary-judgment motion. Lewis then filed his second motion for leave to file a second amended answer. He also filed a motion to dismiss the declaratory-judgment action without prejudice under the abstention doctrine. The court entered another order disposing of these motions. First, the district court denied Lewis's dismissal motion, concluding that abstention was not warranted. The court viewed Lewis's dismissal motion as "an apparent attempt to once again avoid the jurisdiction of th[e] [c]ourt." R. Doc. 97, at 6. The court concluded that all of the relevant factors supported maintaining jurisdiction over the case. *Id.* at 7–8 (citing *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 998 (8th Cir. 2005)).

Second, the court denied Lewis's second motion for leave to file a second amended answer. The court "note[d] that Lewis's proposed second amended answer is peppered with issues th[e] [c]ourt has already ruled on." *Id.* at 9. The court also explained that it was not necessary for Lewis to amend the answer "to better organize it" because the current pleading was not "cumbersome" and an amendment would be "futile." *Id.* And, while Lewis sought to add facts about the contract between Wagstaff and Allen, the court determined that no amendment was necessary because

such facts were "included as undisputed material facts to the pending summary judgment motion." *Id.* at 10.

Third, the court granted in part and denied in part Wagstaff's second summary-judgment motion. It observed that "several [of its] prior rulings ha[d] substantially narrowed the issues in the case." *Id.* at 11. Specifically, the issue was whether "some contract other than [Lewis's] contingent fee agreement with Ms. Allen . . . entitle[d] him to attorney's fees in the [wrongful death] lawsuit." *Id.* at 12. Because "Lewis . . . admitted that he was neither employed nor retained by Wagstaff," the court concluded that Lewis could not "be a third-party beneficiary to the Contract of Employment" between Wagstaff and Allen, which "require[d] that additional counsel be 'employed' or 'retained' by Wagstaff." *Id.* Nevertheless, the court determined that "Lewis may be entitled to some compensation in quantum meruit for the purported work he did on the [wrongful death] lawsuit at Wagstaff's behest after Ms. Allen retained Wagstaff." *Id.* at 13. Later, in an order concerning the scope of discovery, the court clarified that "the only remaining issues are (1) whether [Lewis] did any work on the [wrongful death] lawsuit at [Wagstaff]'s behest and (2) if so, the amount and value of such work." R. Doc. 109, at 5.

Subsequently, the district court entered an order resolving, among other things, Wagstaff's third motion for summary judgment and Lewis's motion for reconsideration of the district court's abstention decision. First, the court denied Lewis's motion for reconsideration of its abstention decision. Its analysis of the relevant factors had "not changed." R. Doc. 153, at 8. Moreover, the court observed, "the factors weigh[ed] even stronger in favor of [it] retaining jurisdiction" because no parallel court action was pending and a bench trial was imminent. *Id.*

Second, the court addressed Wagstaff's motion for summary judgment on the remaining issue of "whether Lewis did any work on the [wrongful death] lawsuit at Wagstaff's request . . . and . . . if so, the amount and value of such work." *Id.* at 9. The

court cited its prior ruling in which it "determined evidence existed showing Lewis had done some work on the [wrongful death] lawsuit at Wagstaff's request after Wagstaff was retained by Ms. Allen, and therefore, may be entitled to compensation in quantum meruit." *Id.* at 10. "Lewis's quantum meruit counterclaim . . . requested the [c]ourt declare the amount of fees and expenses to which he is entitled to receive in quantum meruit from the funds being held by Wagstaff." *Id.* Despite the court's recognition of Lewis's quantum meruit counterclaim, the court acknowledged that "Lewis has chosen to abandon it at this juncture." *Id.* "Abandonment of a claim is akin to a failure to prosecute"; in turn, "a dismissal for failure to prosecute 'operates as an adjudication on the merits.'" *Id.* at 10–11 (quoting Fed. R. Civ. P. 41(b)). Because "all outstanding issues in th[e] case [were] resolved," the court dismissed with prejudice Lewis's quantum meruit counterclaim and denied as moot Wagstaff's summary-judgment motion and motion to exclude expert testimony. *Id.* at 11.

Lewis moved to alter or amend the judgment and for relief from judgment. The court granted in part and denied in part Lewis's motions. In addressing Lewis's motion to alter or amend the judgment, the district court clarified its prior rulings and "amend[ed] its judgment to reflect" that "the amount of the attorney's fee, if any, Lewis is entitled to in relation to the Allen lawsuit" "is zero." R. Doc. 166, at 9–10. As to Lewis's quantum meruit counterclaim, the court reaffirmed its prior "decision to dismiss [Lewis's] quantum meruit counterclaim with prejudice" based on Lewis's failure to present "evidence countering Wagstaff's position and evidence that he did not do any work on the Allen lawsuit at Wagstaff's behest or request" and because "Lewis abandoned his quantum meruit counterclaim." *Id.* at 12.

As to Lewis's motion for relief from judgment, the court rejected Lewis's request "to relieve him from the order dismissing his quantum meruit counterclaim with prejudice to dismissal without prejudice due to Wagstaff's purported misrepresentation and misconduct when representing Ms. Allen." *Id.* at 11 (citing R. Doc. 160, at 4–6). The court explained that it had repeatedly denied such requests

and that "such relief is irrelevant or barred or is not [Lewis's] relief to claim." *Id.* at 12. The court reaffirmed its prior reasoning to deny Lewis such relief.

## II. *Discussion*

On appeal, Lewis argues that the district court erred in (1) denying his motion to dismiss for lack of subject-matter jurisdiction (R. Doc. 42); (2) denying his motion for leave to dismiss counterclaims without prejudice and motions for leave to file his second amended answer (R. Doc. 57 and 97); (3) denying his motion to dismiss the declaratory-judgment action without prejudice under the abstention doctrine (R. Doc. 97) and motion to reconsider the denial of that dismissal motion (R. Doc. 153); and (4) denying, in part, his motion to alter or amend the judgment or, in the alternative, relief from judgment (R. Doc. 166).

## A. *Subject-Matter Jurisdiction*

In his motion to dismiss, Lewis argued the record facts failed to support the existence of subject-matter jurisdiction. *See Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015). As a result, the district court considered "matters outside the pleadings, such as testimony and affidavits." *Id.* at 915. While "we review the ultimate question of whether diversity jurisdiction exists de novo," we apply "the clear-error standard" to "the district court's factual findings." *Id.* (quoting *Nat'l Fitness Holdings, Inc. v. Grand View Corp. Centre, LLC*, 749 F.3d 1202, 1206 (10th Cir. 2014)).[2]

In every federal case, the threshold requirement is jurisdiction because "[f]ederal courts are courts of limited jurisdiction." *Nuevos Destinos, LLC v. Peck*, 999 F.3d 641, 646 (8th Cir. 2021) (internal quotation marks omitted). "Subject-matter

---

[2]Lewis argues that de novo review applies because the district court's decision was based on its review of a transcript from the evidentiary hearing conducted by a magistrate judge. We need not address this argument because, under either standard, Lewis's challenge to the district court's subject-matter jurisdiction fails.

jurisdiction can never be waived or forfeited." *Id.* (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)). "The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Id.* (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)).

Lewis challenges the district court's diversity jurisdiction. He claims that (1) Wagstaff, as a limited liability partnership, failed to plead and prove that its partners were citizens of Kansas and Missouri when the complaint was filed; and (2) the evidence shows that Lewis was a citizen of Missouri, not Indiana, at the time that Wagstaff filed the declaratory-judgment action.

## 1. *Wagstaff*'s *Citizenship*

Wagstaff is a Missouri limited liability partnership. "When one of the parties to the action is a limited partnership, the citizenship of each general and limited partner must be considered in determining whether complete diversity of citizenship exists." *Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990). To establish citizenship, Wagstaff filed the declaration of Jack T. Hyde, "a partner at the law firm of Wagstaff." R. Doc. 32-7, at 1. Hyde set forth a table that he averred "truly and accurately identifies each partner of [Wagstaff] and their corresponding state of citizenship." *Id.* The table identified the state of citizenship for the 19 partners as either Kansas or Missouri. Hyde's declaration properly amends Wagstaff's complaint to allege the partners' citizenship.

Lewis argues that Hyde's declaration is insufficient to establish the partners' citizenship because it does not expressly state that the partners were domiciled in Missouri or Kansas as of the date that Wagstaff filed its complaint. But Wagstaff's appellate brief represents that all partners were so domiciled at the time of filing. Based on the representation in Wagstaff's brief and the lack of contrary evidence, we will "treat the complaint as amended to properly allege diversity of citizenship." *Barclay*, 893 F.2d at 969; *see also id.* ("[T]his court may allow the party asserting that

subject matter jurisdiction exists to amend its complaint on appeal to properly allege diversity of citizenship.").

## 2. *Lewis's Citizenship*

Lewis also argues that the district court erroneously determined that he was a citizen of Indiana—not Missouri—on November 1, 2018. Therefore, he maintains, complete diversity is lacking.

"[D]iversity jurisdiction requires 'complete diversity, that is where no defendant holds citizenship in the same state where any plaintiff holds citizenship.'" *Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079, 1084 (8th Cir. 2017) (quoting *Hubbard v. Federated Mut. Ins. Co.*, 799 F.3d 1224, 1227 (8th Cir. 2015)). We measure "[s]ubject-matter jurisdiction based on diversity of citizenship . . . by the 'facts that existed at the time of filing.'" *Id.* (quoting *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004)). A party may challenge subject-matter jurisdiction "at any time prior to final judgment." *Id.* (quoting *Grupo Dataflux*, 541 U.S. at 571). We review de novo a district court's determination of subject-matter jurisdiction. *Id.* "[B]ut we rely on the district court's findings of fact underlying its domicile determination unless they are clearly erroneous." *Id.*

Lewis "argues that the district court lacked subject-matter jurisdiction to hear this case because both [he] and [Wagstaff] were citizens of Missouri at the time of filing." *Id.* Because Lewis—the defendant—has challenged the jurisdictional allegations, Wagstaff—the plaintiff—bears "the burden of establishing jurisdiction by competent proof and by a preponderance of the evidence." *Id.* (quoting *Russell v. New Amsterdam Cas. Co.*, 325 F.2d 996, 998 (8th Cir. 1964)).

"For purposes of federal jurisdiction, 'domicile' and 'citizenship' are synonymous terms." *Id.* at 1086 (quoting *Ellis v. Se. Contr. Co.*, 260 F.2d 280, 281 (8th Cir. 1958)). "To establish domicile, an individual must both be physically present

in the state and have the intent to make his home there indefinitely." *Id.* at 1085 (quoting *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990)). "[O]bjective factors" instruct our determination of a litigant's intent; those factors include "declarations, exercise of civil and political rights, payment of taxes, obtaining of licenses, location of business or occupation, and ownership of property." *Id.* (quoting *Bruton v. Shank*, 349 F.2d 630, 631 n.2 (8th Cir. 1965)). "A litigant's self-serving '[s]tatements of intention are entitled to little weight when in conflict with facts.'" *Id.* (alteration in original) (quoting *Russell*, 325 F.2d at 999).[3]

We agree with the district court that the *objective* factors weigh in favor of Lewis being domiciled in Indiana as of November 1, 2018. *See Eckerberg*, 860 F.3d at 1085. Lewis offered only self-serving statements of intention to relocate to Missouri. The district court properly accorded them little weight when contrasted with objective facts. *See id.* The court noted facts such as Lewis's filed address with the Indiana Supreme Court, Indiana bar license, Indiana litigation records, his voting registration and voting record, property tax, and his published personal information, all supporting a conclusion that Lewis was domiciled in Indiana at the time of the filing of case.

Accordingly, we hold that the district court did not err in concluding that Lewis is domiciled in Indiana and that complete diversity exists.

---

[3]Lewis argues that he is not the party "required to establish his change of domicile" because he is not the "party seeking to invoke federal jurisdiction." Appellant's Br. at 35. He contends that, under Federal Rule of Evidence 301, he does not bear the burden of proving his change in domicile. We conclude that even if Wagstaff bears the burden of proof on Lewis's change in domicile, it has succeeded in showing that Lewis remained domiciled in Indiana. *See infra.*

B. *Dismissal of Counterclaims and Second Amended Answer*

Lewis next argues that the district court erred in denying his motion for leave to dismiss counterclaims without prejudice and motions for leave to file his second amended answer (R. Doc. 57 and 97). Lewis asserts that the district court's denials of these motions were "based on a mistaken belief that [his] challenge of subject-matter jurisdiction was in bad faith." Appellant's Br. at 42.[4] He also asserts that the district court should have granted his second motion for leave to file his second amended answer because "the [d]istrict [c]ourt's *sua sponte* ruling of October 24, 2019, regarding *quantum meruit* demonstrates that Lewis's attempt to plead *quantum meruit* as an affirmative defense was not futile." *Id.* at 45.

1. *Dismissal of Counterclaims*

When we evaluate "whether a district court abused its discretion in denying a Rule 41(a)(2) motion," "[w]e consider the following factors":

> (1) the [counter] defendant's effort and the expense involved in preparing for trial, (2) excessive delay and lack of diligence on the part of the [counter claimant] in prosecuting the action, (3) insufficient explanation of the need to take a dismissal, and (4) the fact that a motion for summary judgment has been filed by the [counter] defendant.

---

[4]Further, Lewis contends that the denials were "also partially based on the [d]istrict [c]ourt's mistaken belief . . . that Lewis did not make a specific pre-litigation offer of settlement to Wagstaff before this action was filed." *Id.* at 43 (citing R. Doc. 57, at 3 ("Upon learning of the settlement, Lewis began making non-specific demands for payment of his purported attorney's fee. He refused, however, to state how much he believed he was entitled to and what legal basis would support such a fee."); R. Doc. 57, at 4 ("Completely absent from any of these numerous filings is a sum certain to which Lewis claims he is entitled.")). But the district court made these statements as part of its factual findings; they were not part of the court's analysis of Lewis's motion for leave to dismiss his counterclaims.

-13-

*Witzman v. Gross*, 148 F.3d 988, 992 (8th Cir. 1998) (quoting *Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir. 1987)).

We conclude that the district court properly analyzed the aforementioned factors and did not abuse its discretion in denying Lewis's motion for leave to dismiss his counterclaims without prejudice. First, the record supports the district court's conclusion that Wagstaff "has gone to great lengths and expense to prosecute its claims and defend against the counterclaims in the short time this case has been pending." R. Doc. 57, at 5. Prior to Lewis seeking dismissal of his counterclaims, Wagstaff had filed two motions to dismiss Lewis's counterclaims and moved for summary judgment. The district court also found the presence of excessive delay, noting that Lewis did not move to dismiss his counterclaims until March 27, 2019—almost five months after the case was filed. And, the district court appropriately found that Lewis provided an "insufficient explanation of the need to take a dismissal." *Id.* In Lewis's motion, he provided no reason for seeking leave to dismiss his counterclaims. *See* R. Doc. 43. It was only *after* Wagstaff responded to Lewis's voluntary-dismissal motion that Lewis argued in reply that "[c]ounterclaims are not compulsory in an action solely for declaratory judgment" and therefore Lewis sought "to dismiss the counterclaims without prejudice to avoid the possibility of triggering claim preclusion." R. Doc. 54 at 2–3 (emphasis omitted). Lastly, Wagstaff had filed a summary-judgment motion on December 12, 2018, that remained pending at the time that Lewis sought to voluntarily dismiss his counterclaims. *See Witzman*, 148 F.3d at 992.

### 2. *Second Amended Answer*

Lewis also argues that the district court abused its discretion in denying his motion for leave to file a second amended answer. We find no abuse of discretion. *See Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 946 (8th Cir. 2012) (standard of review). The court denied relief after reasonably concluding that Lewis was "acting in bad faith in attempting to amend his answer, which necessarily unduly prejudices

[Wagstaff]." R. Doc. 57, at 6; *see also Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) ("A district court appropriately denies the movant leave to amend if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005))). The record shows that Lewis was "attempt[ing] to change some admissions to denials on material allegations made in the [c]omplaint, reassert[] his quantum meruit counterclaim as an affirmative defense, and seek[] his own declaratory judgment on certain issues." R. Doc. 57, at 6. (citing R. Doc. 45-1).[5]

## C. *Abstention*

Lewis additionally contends that the district court erroneously applied the abstention doctrine in denying his motion to dismiss the declaratory-judgment action without prejudice. He also asserts that the court erred in denying his motion to reconsider the denial of that dismissal motion. He maintains that this court's "precedent requires discretionary dismissal when a declaratory plaintiff raises chiefly affirmative defenses, and granting declaratory relief could effectively deny an allegedly injured party [like himself] his otherwise legitimate choice of forum and time for suit." Appellant's Br. at 29.

As a general rule, "a federal district court must exercise its jurisdiction over a claim unless there are exceptional circumstances for not doing so." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 967 (8th Cir. 2013) (internal quotation marks omitted). But "[t]his general rule . . . yields to practical considerations and substantial discretion when the federal complaint seeks a declaration pursuant to the

---

[5]For the same reasons, the district court did not abuse its discretion in denying Lewis's second motion for leave to file a second amended answer. *See* R. Doc. 97, at 9–10.

-15-

Declaratory Judgment Act, 28 U.S.C. § 2201(a)." *Id.* A district court has "unique and substantial" discretion under the Declaratory Judgment Act. *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

On this record, we have no difficulty concluding that the district court properly acknowledged and applied the appropriate factors for use of the abstention doctrine in a declaratory-judgment action as identified and explicated in *Scottsdale*, 426 F.3d at 998. *See* R. Doc. 97, at 8.

### D. *Motion to Alter/Amend Judgment or Relief from Judgment*

Finally, Lewis argues that the district court erroneously denied his motion to alter or amend the judgment or, in the alternative, relief from judgment. First, he asserts that the district court erroneously ruled that he "abandon[ed] his potential right to recover from Wagstaff in quasi-contract or in tort (with compensatory damages potentially measured in quantum meruit) for his damages related to his deprivation of attorney fees for legal services in the [wrongful death] case." Appellant's Br. at 47 (emphasis omitted). According to Lewis, he "abandoned only his potential claim to the funds in Wagstaff's trust account derived from the [wrongful death] case when he explicitly stated his desire to pursue his claims against Wagstaff in tort, rather than in quasi-contract." *Id.* (emphasis omitted). Therefore, he concludes, the district court erroneously denied his motion to alter or amend the judgment. Second, Lewis argues that the district court erroneously denied its motion for relief from final judgment because Wagstaff acted with unclean hands.

Under Federal Rule of Civil Procedure 59(e), a party may file a motion to alter or amend the judgment. "Motions under Rule 59(e) serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence and cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Cont'l Indem. Co. v. IPFS of New York, LLC*, 7 F.4th 713, 717 (8th Cir. 2021)

(internal quotation marks omitted). We review for an abuse of discretion a district court's denial of a Rule 59(e) motion. *Id.*

"[Federal] Rule [of Civil Procedure] 60(b) provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *In re Levaquin Prod. Liab. Litig.*, 739 F.3d 401, 404 (8th Cir. 2014) (internal quotation marks omitted). Under the rule, a party may file a motion for relief from final judgment based on "fraud . . ., misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). "To prevail on [a] Rule 60(b)(3) claim, [the moving party] must show by clear and convincing evidence that [the opposing party] engaged in fraud or other misconduct and that this conduct prevented [the moving party] from fully and fairly presenting its case." *In re Levaquin Prod. Liab. Litig.*, 739 F.3d at 404 (internal quotation marks omitted). A district court is afforded "wide discretion in ruling on a Rule 60(b) motion[,] and we will only reverse for a clear abuse of discretion." *Id.* (internal quotation marks omitted).

We conclude that the district court did not abuse its discretion in denying Lewis's motion to alter or amend the judgment or, in the alternative, relief from judgment. We conclude that the district court reasonably interpreted Lewis's response to Wagstaff's third summary judgment motion as an abandonment of his quantum meruit claim. *See* R. Doc. 144, at 33–34. In addition, Lewis has not sustained his burden of proving that Wagstaff has engaged in misconduct that prevented him from fully and fairly presenting his case.

### III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____

-17-